# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CORTEZ LYONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 15-cv-4668 |
| EURISTO AGUINALDO, M.D., and MARY ) | |
| DIANE SCHWARZ, P.A., ) | |
| ) | |
| Defendants. ) | Judge Sharon Johnson Coleman |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cortez Lyons filed a *pro se* Complaint, alleging that defendants Wexford Health Sources, Inc., Dr. Euristo Aguinaldo ("Dr. Aguinaldo"), and Physician's Assistant Mary Schwarz ("P.A. Schwarz") were deliberately indifferent to Lyons' serious medical needs.[1] Dr. Aguinaldo and P.A. Schwarz move for summary judgment [102], arguing that the undisputed facts demonstrate that they were not deliberately indifferent to Lyons' serious medical needs. For the reasons that follow, this Court grants the motion.

**Background**

The following facts are undisputed. During the relevant time, plaintiff Cortez Lyons was incarcerated in the Northern Receiving Center ("NCR") at Stateville Correctional Center. He arrived at the NCR on September 6, 2013. (Dkt. 119, Pl's Resp. to Defs' L.R. 56.1 Statement of Facts, at ¶ 8). Defendant Mary Diane Schwarz worked as a licensed and board-certified physician's assistant at the NCR. (*Id.* at ¶ 2). Defendant Euristo Aguinaldo, M.D., worked as a licensed medical doctor at the NCR. (*Id.* at ¶ 3). Between October 2013 and April 2014, Lyons had four evaluations for a hemorrhoid

---

[1] Wexford Health Sources, Inc. was dismissed from the case on July 17, 2015. The Court recruited trial bar counsel to represent plaintiff.

1

condition by P.A. Schwarz, and two by Dr. Aguinaldo. On his second visit with Dr. Aguinaldo, Lyons was sent to the emergency room at Saint Joseph Medical Center.

Lyons' hemorrhoids problem began in 2010. (*Id.* at ¶ 7). His hemorrhoid condition worsened leading to a "banding" procedure in 2012. (*Id.*). Banding is an outpatient procedure during which a small band is applied to the base of a hemorrhoid, stopping the blood flow to the hemorrhoid mass, causing it to shrink and fall off. (*Id.*).

Lyons presents progress notes from a medical visit on October 15, 2013, two days prior to P.A. Schwarz's first evaluation of him. (Dkt. 128, Defs' Resp. to Pl's L.R. 56.1 Statement of Additional Facts at ¶ 3). The note states that Lyons complained of large amounts of bleeding from his anus, the unidentified staff member who made the note observed Lyons standing up with a toilet bowl full of blood and further noted that Lyons refused her offer of Dibucaine ointment. *Id.* On October 16, 2014, Lyons was a no-show for his appointment in the medical unit. (Dkt. 119-4, Pl's Ex. 4 at p.8).

After complaining of rectal bleeding and hemorrhoids, Lyons had his first of four visits with P.A. Schwarz on October 17, 2013, a little over a month after arriving at the NCR. (Dkt. 119 at ¶ 10). On that date, P.A. Schwarz documented normal vital signs, which indicated to her that Lyons was not in any significant distress. (*Id.* at ¶ 9). Lyons informed her of his prior problems with hemorrhoids, including the 2012 banding procedure. (*Id.* at ¶ 10). P.A. Schwarz's progress notes indicate that Lyons did not complain of prolapsed hemorrhoids (hemorrhoids that are pushed outside of the rectum), pain, or severe bleeding. (*Id.*). She examined Lyons' rectum and anus and found that he had a rectal skin tag, some bulging inside his sphincter, which can be a sign of hemorrhoids. (*Id.* at ¶ 11). She also recorded that she found no visible signs of bleeding nor any prolapse. (*Id.*). She concluded that Lyons had bleeding hemorrhoids based on his history and her examination, even though there was no active bleeding at that time. (*Id.*). She prescribed Anusol Suppositories containing HCT (Hydrocortisone

Ointment) to be taken twice per day to reduce inflammation, itching, and swelling. (*Id.* at ¶ 12). She also ordered a stool softener to help reduce irritation. (*Id.* at ¶ 12).

P.A. Schwarz stated in her affidavit that there was no need to order pain medication because Lyons did not complain of pain and the suppositories would reduce the swelling that would cause pain.[2] (*Id.* at ¶ 13; Dkt. 119-2, Ex. 2 at ¶ 10). She did not refer Lyons to a doctor because her examination of him showed no significant bleeding or prolapsed hemorrhoids. (Dkt. 119 at ¶ 13). Based on her evaluation, P.A. Schwarz believed the appropriate treatment was as she prescribed. (*Id.*).

On November 10, 2013, Lyons again saw an unidentified medical provider and reported that he had persistent hemorrhoids and loss of blood. (Dkt. 119-4, Ex. 4 at p. 11). Defendants admit that on this date, the progress notes state that the staff member saw visible external hemorrhoids and that Lyons was unable to tolerate an internal exam. (Dkt. 128 at ¶ 5). The note further documents that Lyons "likely will need a hemorrhoidectomy" and requests a surgical consult. Lyons was prescribed suppositories and Dibucaine ointment. (*Id.*).

On November 13, 2013, Lyons again saw an unidentified medical provider to whom he reported that his "buttocks had a lot of blood coming out from [his] surgery." (Dkt. 119-4, Ex. 4 at p. 12). The note further reflects that Lyons complained of dizziness and feeling light-headed. (Dkt. 128 at ¶ 6). There is also a progress note from November 14, 2013, that is illegible and the individual that wrote it has not been identified. (Dkt. 128 at ¶ 7; Dkt. 119-4, Ex. 4 at p. 13.)

On January 31, 2014, Lyons again saw P.A. Schwarz for complaints of bulging hemorrhoids, pain, and intermittent bleeding. (Dkt. 119 at ¶ 14). P.A. Schwarz documented in her progress notes that Lyons' blood pressure and heart rate was within normal limits. (*Id.*). Lyons did not complain of prolapsed hemorrhoids and told her the suppositories had provided relief. (*Id.*). In the "objective"

---

[2] Lyons initially objected to P.A. Schwarz's affidavit because defense counsel sent him an unsigned copy. However, that objection has been withdrawn and there is a signed copy in the Court record.

section of her progress notes she noted that her examination of Lyons' rectum and anus and found the hemorrhoids in the same condition as before. (*Id.* at ¶ 15). She averred that had she found blood, prolapse, or thrombosed hemorrhoids, she would have documented it in her notes. (*Id.* at ¶ 15). At the January examination she prescribed more suppositories because Lyons reported it given him relief. (*Id.* at ¶ 16).

P.A. Schwarz stated that had Lyons complained of problems defecating, she would have ordered more stool softener. (*Id.* at ¶ 17). She further explained that there was no medical need for oral pain medication because Lyons did not complain of significant pain. (*Id.*). There was no medical need for referral to a physician because Lyons had no active bleeding, thrombosis, or prolapse on that date. (*Id.*). P.A. Schwarz would have learned from the labs she ordered in October that Lyons' hemoglobin was slightly below normal at 12.4 (normal range is 13.2-18.0). (*Id.*). She stated that she would also have seen the results from a follow-up CBC, taken November 12, 2013, in Lyons' medical file that his hemoglobin was back to normal range at 13.7. (*Id.* at ¶ 19). P.A. Schwarz averred that these lab results would have led her to conclude that Lyons did not have significant bleeding from his hemorrhoids. (*Id.*).

P.A. Schwarz examined Lyons a third time on February 17, 2014. (*Id.* at ¶ 20). Her progress notes indicate that his blood pressure, pulse, and respiratory rate were all within normal ranges. (*Id.*). Lyons reported to her that his hemorrhoids were bleeding and that the bleeding was worse. (*Id.*). P.A. Schwarz's progress notes indicate that Lyons refused examination of his rectum and anus. (*Id.* at ¶ 21). She did not refer him to a physician on this date because there was no documented active or severe bleeding or prolapse. (*Id.*). She prescribed additional suppositories and ordered another blood test to determine if there was significant bleeding from the hemorrhoids. (*Id.* at ¶ 22). Lyons declined the offer of Fibercon to relieve discomfort from difficulty defecating. (*Id.*). P.A. Schwarz did not order

oral pain medication because Lyons did not complain to her of significant levels of pain on that date. (*Id.* at ¶ 23).

On March 3, 2014, Dr. Aguinaldo examined Lyons for the first time to follow-up on the bloodwork ordered by P.A. Schwarz in February. (*Id.* at ¶ 24). He documented normal blood pressure and pulse. Dr. Aguinaldo testified that he would have documented it in his notes if Lyons had complained of hemorrhoid bleeding, prolapsed hemorrhoids, or pain. (*Id.*). He further testified he did not examine Lyons' rectal and anal area because Lyons made no related complaints. (*Id.*). Dr. Aguinaldo reviewed the lab results from February 18, 2014, which were normal except for a slightly below normal hemoglobin level. (*Id.* at ¶ 25). Dr. Aguinaldo testified that an 11.3 hemoglobin level is not low enough to cause concern, but he prescribed Feosol, an iron supplement, to address any iron deficiency that might be causing the low hemoglobin. (*Id.*). Dr. Aguinaldo represented that he would have investigated the hemoglobin further if the level had been lower. (*Id.*). He did not prescribe any hemorrhoid medication that day because Lyons did not complain of any hemorrhoid-related issues. (*Id.* at ¶ 26). Dr. Aguinaldo explained that the suppositories that P.A. Schwarz prescribed just two weeks prior were probably effective enough to relieve Lyons' symptoms. (*Id.*).

Dr. Aguinaldo denied that he told Lyons that he would not give him pain medication because it would make the bleeding worse. (*Id.*). He testified that if he had found something based on Lyons' complaints and evaluation that suggest Lyons needed surgery, then he would have sent Lyons for surgery. (*Id.* at ¶ 27). Dr. Aguinaldo testified that he did not tell Lyons on March 3, 2014, that he needed surgery. (*Id.*). Dr. Aguinaldo also testified that he would have referred Lyons for surgery if called for no matter the status of the facility. (*Id.*). Dr. Aguinaldo testified that if hemorrhoids are responding to conservative measures like suppositories, it is reasonable to hold off referring the patient to a specialist for surgical evaluation. (*Id.*).

P.A. Schwarz saw Lyons a fourth, and final, time on March 26, 2014. (*Id.* at ¶ 28). Her progress notes from that date show that his blood pressure, pulse, and respiratory rate did not indicate distress. (*Id.*). She documented that Lyons reported temporary resolution of his complaints through use of suppositories. Lyons "self-reported" that he was "scheduled for surgery but shipped." (*Id.*). P.A. Schwarz noted Lyons' last two CBC lab results. (*Id.* at ¶ 29). She concluded that Dr. Aguinaldo's prescription for Feosol suggested that he was not concerned about the small reduction in hemoglobin level and believed the cause to be iron deficiency. (*Id.*).

P.A. Schwarz examined Lyons on March 26, 2014, and observed large external hemorrhoids with a thrombus. (*Id.* at ¶ 30). As a result, she increased the aggressiveness of her treatment, prescribing a Sitz bath (a shallow bath that cleanses and soothes the region to help alleviate discomfort), and Protocort ointment (a corticosteroid topical cream used to reduce inflammation and the constriction of blood vessels). (*Id.*). She also gave Lyons Dibucaine & Hydrocortisone ointment to alleviate Lyons' immediate discomfort until the other prescriptions arrived. (*Id.*). P.A. Schwarz also ordered another CBC to check whether his hemoglobin level was down-trending. (*Id.*). The results of that test showed that his hemoglobin was not down-trending. (*Id.*). P.A. Schwarz found no active bleeding and no prolapse. (*Id.*). She stated that there was no medical need to refer him back to Dr. Aguinaldo or send him out to a specialist because there was no active or severe bleeding, no significant pain, and no prolapse. (*Id.* at ¶ 31). She stated that she would have referred him to a physician had there been any of those symptoms. (*Id.*). P.A. Schwarz averred that inmates at the NCR would be sent for surgery or surgical consultations if medically indicated. (*Id.* at ¶ 32).

On April 4, 2014, Lyons went to the healthcare unit and an unidentified LPN ("Licensed Practical Nurse") noted that Lyons complained of bleeding hemorrhoids and throwing up blood. Lyons rated his pain as "10 out of 10". (Dkt. 128 at ¶ 15; Dkt. 119-4 at p. 20).

6

On April 5, 2014, Dr. Aguinaldo saw Lyons a second time. (Dkt. 119 at ¶ 36). At this visit, Lyons presented with elevated diastolic blood pressure and pulse consistent with pain. (*Id.*). Lyons also complained to Dr. Aguinaldo that he had lots of bleeding and that his hemorrhoids were very painful. (*Id.*). Upon examination, Dr. Aguinaldo found that Lyons had large thrombosed hemorrhoids that were actively bleeding. (*Id.* at ¶ 37). Dr. Aguinaldo attempted to stop the bleeding with a pressure dressing but it persisted. (*Id.*). Based on the persistent bleeding from large thrombosed hemorrhoids and the severe pain that Lyons was experiencing, Dr. Aguinaldo immediately referred him to Saint Joseph Medical Center emergency room for evaluation. (*Id.*). Lyons was transported to Saint Joseph Medical Center that same day and underwent surgery two days later. (Dkt. 119 at ¶ 41). The hemorrhoidectomy performed on April 7, 2014, completely resolved his hemorrhoid issues. (*Id.*).

Dr. Aguinaldo testified that his progress notes from April 4, 2014, compared to March 3, 2014, show a stark contrast in the complaints he documented from Lyons. (*Id.* at ¶ 38). In March, Lyons did not complain of any hemorrhoid related issues. (*Id.*). Lyons testified at his deposition that on every occasion on which he saw either P.A. Schwarz or Dr. Aguinaldo he complained of severe pain and bleeding from his hemorrhoids. (*See generally* dkt. 119-1, Pl's dep.) He states that he was begging them to send him for surgery and that on each occasion they told him he had to wait until he was in a permanent placement before he could be referred out for surgery. (*Id.* at p.49 ln. 4-8).

**Legal Standard**

Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), *reh'g denied* (Mar. 27, 2017) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)); Fed. R. Civ. P. 56(a). In deciding whether summary judgment is appropriate, this Court accepts the nonmoving party's evidence as true

7

and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**Discussion**

Defendants move for summary judgment, arguing that the undisputed facts demonstrate that P.A. Schwarz and Dr. Aguinaldo were not deliberately indifferent to Lyons' serious medical need. Lyons argues that P.A. Schwarz and Dr. Aguinaldo ignored his complaints of pain and bleeding from his hemorrhoids and refused to send him for surgery. Lyons contends their conduct prolonged his suffering. None of the evidence that Lyons offers in support of his claim that his condition was worse than the defendants documented is properly authenticated. Lyons relies on six printouts from websites and several progress notes from unidentified medical personnel. Dkt. 119, Pl. Exs. 4, 6-11.

The Court may consider as evidence properly authenticated and admissible documents or exhibits when considering a motion for summary judgment. *Szymankiewicz v. Doying*, 187 F. App'x 618, 622 (7th Cir. 2006) (citing *Scott v. Edinburg,* 346 F.3d 752, 760 n. 7 (7th Cir. 2003), and *Woods v. City of Chicago,* 234 F.3d 979, 988 (7th Cir. 2001)). "To be admissible, documents must be authenticated by an affiant through whom the exhibits could be admitted into evidence." *Id.* The exhibits at issue here purport to contain medical information. In the case of learned treatises, periodicals, or pamphlets, Federal Rule of Evidence 803(18) exempts such statements from the rule against hearsay if: (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice. Fed. R. Evid. 803(18). Lyons has made no attempt to authenticate these exhibits and thus this Court will not consider them. The Court will now turn to merits of the motion before the court.

Prison officials and employees violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners."

8

*Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Defendants here do not dispute that Lyons had a serious medical condition. *See Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005) (defining a serious medical condition as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."). Accordingly, Lyons need only show that each defendant acted with a "'sufficiently culpable state of mind.'" *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). Lyons must present evidence creating an issue of fact that defendants knew of and disregarded an excessive risk to Lyons' health. *See Greeno,* 414 F.3d at 653 (quoting *Farmer,* 511 U.S. at 837). In other words, P.A. Schwarz and Dr. Aguinaldo each must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must have drawn the inference. *Id.* Where, as here, the claim relates to a delay in medical care, Lyons does not need to show that he was "literally ignored." *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir. 2000). However, Lyons must show "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Collins v. Seeman,* 462 F.3d 757, 762 (7th Cir. 2006) (quoting *Duane v. Lane,* 959 F.2d 673, 677 (7th Cir. 1992)). Isolated incidents of delay are insufficient to establish a deliberate indifference claim; instead, the Court looks at instances of delay within the totality of the medical care the inmate received. *See Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000).

Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir.2010) (citing *Estelle v. Gamble,* 429 U.S. at 106). That is what happened here. It is undisputed that between his arrival at the NCR on September 6, 2013, and his surgery on April 7, 2014, Lyons was treated by defendants six times and by other unidentified medical personnel an additional four times. Although Lyons argues that both P.A. Schwarz and Dr. Aguinaldo refused him medically necessary surgery and prolonged his pain, he presents no admissible evidence to support his claim or refute the medical record.

The record evidence here demonstrates that P.A. Schwarz examined Lyons on each occasion that she saw him, prescribed medication to alleviate his symptoms from the hemorrhoids, and order blood work to check whether Lyons was experiencing significant blood loss. Further, that when Lyons presented with more severe symptoms on March 26, 2014, she prescribed additional treatments to alleviate his symptoms. The only evidence offered to contradict the medical record and P.A. Schwarz affidavit is Lyons' own testimony that his hemorrhoid condition and pain was more severe than documented in the progress notes. Moreover, Lyons concedes that the suppositories were providing relief and that his vital signs were inconsistent with significant pain or distress on February 17, 2014. Dkt. 119 at ¶ 20.

Lyons also argues that Dr. Aguinaldo was deliberately indifferent when he told Lyons on March 3, 2014, that he needed surgery for his hemorrhoids but that he could not be sent out while an inmate at the NCR. Lyons' testimony is directly contradicted by the record. Dr. Aguinaldo in fact referred him out for surgery while Lyons was still an inmate in the NCR. Lyons has presented no evidence beyond his own subjective testimony that surgery was medically necessary at an earlier date. "Without any medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact." *Walker v. Zunker*, 30 F. App'x 625, 628 (7th Cir. 2002) (citing *Walker v. National Recovery, Inc.,* 200 F.3d 500, 503 (7th Cir.1999)). Based on the record before the Court, there is no genuine issue of material fact to submit to a jury and defendants are entitled to judgment as a matter of law.

**Conclusion**

Based on the foregoing discussion, this Court grants summary judgment [102] in favor of defendants. Civil case terminated.

IT IS SO ORDERED.

Date: 8/14/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge